GRINDELL'S CASE

Hancock.    Opinion June 29, 1927.

*Under chapter 25, R. S., the state highway commission is not an agent of the town through which a state aid highway happens to be located, but a state board acting for and in behalf of the state.*

*Chapter 154 P. L. 1917 and chapter 25, R. S. are in pari materia and must be construed together.    By express terms of chapter 154, highways designated under it by the towns become state aid highways.    Once so designated they fall in the same class as those designated under chapter 25, R. S.*

*Without specific provision in chapter 154 making the state highway commission the joint agent of both the towns and the state, the state highway commission must be presumed to act in the same capacity under chapter 154 P. L. 1927 as under chapter 25, R. S.*

In the instant case the deceased was in the employ of the state in the work of constructing the highway.

On appeal from a decree affirming an award of compensation to Cassie Grindell as dependent widow of Thomas W. Grindell, who, while at work in constructing a state highway in Ellsworth, received fatal injuries by the collapsing of a gravel bank.   The question involved was as to whether the deceased was in the employ of the State, or in the employ of both the State and the City of Ellsworth.   Upon a hearing the Industrial Accident Commission found that the deceased at the time of the accident was in the employ of the State Highway Commission of the State of Maine and not in the employ of the City of Ellsworth and awarded compensation to be paid by the State, and an appeal was taken.   Appeal dismissed with costs.   Decree below affirmed.

The case appears in the opinion.

Petitioner was without counsel.

*Franklin Fisher*, for State Highway Commission.

*D. E. Hurley*, for the City of Ellsworth.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BARNES, JJ.

WILSON, C. J.   During the year 1926, the city of Ellsworth and the towns of Orland and Bucksport appropriated certain sums for the construction of a state aid highway leading through said city and towns, under the provisions of section 1 of chapter 154 P. L. 1917.   The State of Maine, through the state highway commission, set apart a certain sum from the funds appropriated to the construction of state aid highways in compliance with the provisions of section 2 of said act and section 20 of chapter 25 R. S.

The state highway commission then proceeded to construct the highway designated in the vote of said city and towns, and while engaged in the work within the limits of the city of Ellsworth the petitioner's husband received injuries arising out of and in the course of his employment, which resulted in his death.

As to these facts, and that the wife of the deceased and the petitioner in these proceedings is his sole dependent, there is no dispute.   The only issue raised here is: was the deceased, at the time he received the injuries, in the employ of the state or in the joint employ of the state and the city of Ellsworth.

The associate legal member of the Industrial Accident Commission found that the employee was in the employ of the state and ordered it to pay compensation to the petitioner.   From the decree based on the award the state appealed.

The claim set forth in the answer filed by the state is that the state and the city of Ellsworth were in partnership in the construction of this highway.   Upon this issue, which is the only one raised by the answer upon which any dispute arises, the appeal clearly can not be sustained.   There is no provision of any statute under which it is suggested that either the state or any city or town, even if they so desired, is expressly authorized to enter into a partnership in the construction of state aid highways.   It would require legislation in clear terms to authorize such an unusual relation between the state and one of its towns.

The construction of highways is a governmental function, a part of the sovereign powers of the state.   It may impose this duty upon any of the political subdivisions of the state as it did prior to the pas-

sage of the State Highway Act in 1913, or it may perform the duty itself.

Under the State Highway Act, now chapter 25 R. S., a state highway commission was created which designated all state and state aid highways; and which either lets out by contract the work of construction, or if no bids are accepted, does all the work of construction, the expense of all state aid highways being paid out of a "joint fund" in part contributed by the towns and in part by the state. By this act, the state has taken over the work of construction, and maintaining all state and state aid highways. Secs. 6, 7, 8, 9, 17, 24, chap. 25 R. S.

By the terms of secs. 6, 7, and 10 of chap. 25, the full authority to make all contracts, hire all labor and purchase all materials for the construction of such ways is clearly vested in the state highway commission, acting for the state. While the expense of constructing and of maintaining state aid highways under the State Highway Act is to be paid from a joint fund to which towns contribute, the state highway commission is not an agent of the town in which state aid highway happens to be located, but a state board acting for and on behalf of the state.

It would certainly be a strained construction that would render towns contributing to the joint state aid highway funds under chapter 25 jointly liable with the state under the Workmen's Compensation Act for any injuries occurring during the construction of state aid highways under the provisions of chapter 25, unless the work of construction was being performed by the town under a contract.

If the Act of 1917, chapter 154, stood alone, it might not be entirely clear as to who was to do the work of construction, whether the several towns under the supervision of the state highway commission or the commission itself. The act, however, and chapter 25 R. S. relating to state highways are clearly *in pari materia*, Black on Interpretation of Laws, sec. 86, and must be construed together as a part of a general plan for the improvement of our highways to be constructed and maintained under the direction and control of the state highway commission. While it permits three towns by joining together to designate a highway running through the three towns, if fifteen miles in length, as a state aid highway, which under chapter 25 R. S. can be designated only by

the highway commission, in other respects the money to be appropriated by the towns and the aid to be granted by the state, except in case a town shall increase its appropriation to some multiple of the minimum sum it may appropriate, is determined by Chapter 25 R. S. By the express terms of chapter 154, such highways become state aid highways. Once designated by the towns they fall in the same class of state aid highways as those designated under chapter 25 R. S.

The funds once appropriated under chapter 154, though designated as a "joint fund", as in case of all state aid highway funds under chapter 25 R. S. is disbursed in the same manner as the joint funds provided for the construction of state aid highways under that chapter. Without specific provision in chapter 154 making the state highway commission the joint agent of both the towns and state in constructing such state aid highways and defining their joint responsibilities, we think it must be presumed that it was the legislative intent that the state highway commission should act in the same capacity under this act as under chapter 25 R. S., viz: in behalf of the state.

*Appeal dismissed with costs.*
*Decree below affirmed.*